**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 18-02860 |
| Robbin Fulton, ) | HON. JACK B. SCHMETTERER |
| ) | CHAPTER 13 |
| DEBTOR. ) | |

**DEBTOR'S REPLY TO THE CITY OF CHICAGO'S RESPONSE
TO DEBTOR'S MOTION FOR SANCTIONS**

NOW COMES Robbin Fulton, Debtor, by and through her attorneys, The Semrad Law Firm, LLC, and in reply to the City of Chicago's (hereinafter "City") Response to Debtor's Motion for Sanctions, states as follows:

**I.     INTRODUCTION**

As the 7th Circuit in *In re Pence,* 905 F.2d 1107 (7th Cir. 1990) recognized, a creditor may not "stick its head in the sand and pretend it would not lose any rights by not participating" in a bankruptcy proceeding. *In re Pence*, 905 F.2d at 1107. Though it is evident that the City believes otherwise, they are not above the law and must, like hundreds of other creditors, take action to protect their rights in bankruptcy. By failing to file any motion before this court or object to Debtor's confirmation, the City has utterly disregarded the automatic stay and the 7th Circuit's holding in *Thompson v. Gen. Motors Acceptance Corp.,* LLC, 566 F.3d 699 (7th Cir. 2009) (hereinafter "*Thompson*") which requires creditors to immediately turnover vehicles seized pre-petition once a bankruptcy petition is filed. Instead, the City has taken the position that unless Debtor's comply with their specific demands, they will not return impounded vehicles, basing their new policy on primarily two non-binding opinions - *City of Chicago v. Kennedy*, 2018 WL

1

2087453 (N.D. ILL. May 4, 2018) (hereinafter "*Kennedy"*), and *In re Avila,* 566 B.R. 558 (Bankr. N.D.Ill. 2017)(hereinafter "*Avila*").

As a result, the City will not release Debtor's 2015 Kia Soul ("vehicle") unless she amends her plan to pay their claim in full and provide a 60 month set which would require her to increase her plan payments to a level exceeding her disposable income. Then, and only then, will the City "voluntarily" release Debtor's vehicle. Such a policy not only harms the Debtor, but also unfairly tips the bargaining power in favor of the City, leaving debtors with the difficult decision of agreeing to their terms and paying an exorbitant amount of money to the City to retrieve vehicles typically worth far less than the parking ticket debt owed, or file a motion for sanctions and risk a delay in retrieving their vehicle due to litigation – both concerns *Thompson* heavily relied upon in holding that the onus is on the Creditor to seek adequate protection not the Debtor to file a motion for sanctions and turnover. *Thompson,* 566 F.3d 704-707 ("allowing a creditor to maintain possession of the asset until it subjectively feels that adequate protection is in place, or until the debtor moves for the asset's return, unfairly tips the bargaining power in favor of the creditor… essentially remov[ing] the equitable powers of the bankruptcy court… [placing] itself in a position above other secured creditors").

Moreover, the City's assertion that seeking turnover of a vehicle may only be brought by an adversary proceeding is without merit and flies in the face of *Thompson* and this district's common practice of ordering turnover by means of a motion rather than adversary which allows an expedited process to retrieve vehicles unlawfully being held. The longer it takes to retrieve a vehicle, the more at risk a case is of being dismissed and creditors being paid little to nothing in the case.

Lastly, the City does not have a lien in impounded vehicles as they have exceeded their home rule authority by transforming in personam parking ticket debt to secure debt with a lien on a vehicle bearing no relation to the underlying debt owed. It is no secret that the City intentionally passed an ordinance providing them an inferior lien to fit within a bankruptcy "loophole." Despite their efforts, however, creating such a lien does not comport with state law and must not be validated. Therefore, Debtor's motion for sanctions should be granted and the City must turnover Debtor's vehicle.

## II. DEBTOR PROPERLY FILED A MOTION FOR SANCTIONS AND IS NOT REQUIRED TO FILE AN ADVERSARY FOR TURNOVER

In an attempt to divert this Court from the substantive issues at hand, the City is asserting that a turnover order may only be accomplish under 11 U.S.C. §542 and an adversary proceeding, relying on the recent decision in *Kennedy*. However, *Kennedy* does not state that an adversary proceeding is mandatory, but rather suggested it as a mechanism to seek turnover and emphasized the procedural deficiencies that occurred in that case when the court ordered turnover sua sponte without a motion for turnover or sanctions before the court. *Kennedy*, 2018 WL 2087453 at *4.

Indeed, the same argument advanced by the City was brought by GMAC in *Thompson* and struck down, finding the argument unavailing and holding jurisdiction to be present when the Debtor filed a motion for turnover rather than an adversary *Thompson* 566 F.3d at 701. Additionally, this very own court has routinely permitted motions for sanctions with the remedy of turnover to be brought by motion rather than adversary.; *See In re Walker*, 17 BK 33957, 2017 WL 6547730, at *1 (Bankr. N.D. Ill. Dec. 20, 2017), opinion withdrawn, 17 BK 33957, 2018 WL 799150 (Bankr. N.D. Ill. Feb. 8, 2018)(finding jurisdiction proper under 28 U.S.C §1334, and §157).

Here, unlike in *Kennedy*, the Debtor properly filed a motion for sanctions and turnover and this honorable court did not enter an order sua sponte. Finding that a motion for sanctions with the remedy of turnover proper rather perfectly aligns with the underlying policies found in *Thompson*, i.e., with the onus on the creditor to immediately turnover pre-petition seized assets upon the filing of a petition, it would be unduly burdensome on the Debtor and the Debtor's creditors to go through the process of filing an adversary to seek turnover which would delay turnover of a vehicle necessary for successful reorganization. *Thompson,* 566 F.3d at 707 ("if a debtor's car remains in the hands of a creditor, it could hamper the debtor from either attending or finding work, which is crucial for garnering the funds necessary to pay off his debts.") To require an adversary to turnover a vehicle when a Creditor is violating the automatic stay would only delay the inevitable return of the vehicle.

### III.    THE CITY DOES NOT HAVE A VALID POSSESSORY LIEN IN IMPOUNDED VEHICLES.

The City's enactment of M.C.C. §§2-14-132(l) and M.C.C. §§ 9-92-080(f), which both state that "any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle," is invalid as they exceed their home rule authority under state law and as held in *In re Howard*, 2018 WL 1905587 (April 19, 2018)(hereinafter "*Howard*").

In the City's Response it relied on the ruling in *Kennedy* to assert that they have a valid possessory lien. However, the Court specifically stated that "[the debtor] does not dispute that the city has a possessory lien in the vehicle, nor does he dispute that a possessory lien falls within the automatic stay exception." *Kennedy* 17 CV 5945, 2018 WL 2087453, at *2. Therefore, the Court spent little to no analysis into the validity of the City's ordinances with respect to state law.

Conversely, *Howard* specifically addressed this issue and found the City's ordinances to not pass legislative muster. Here, the fact pattern is almost identical to that in *Howard.* In *Howard,* Debtor's plan was confirmed without objection by the City and after confirmation the City refused to release Debtor's vehicle unless they filed a motion to modify the plan to meet their demands. The City never filed a motion for relief or otherwise participated in Debtor's bankruptcy case. Similarly, Debtor's plan in the current case was confirmed without objection by the City, treating them as a general unsecured creditor pursuant to their claim on file. Only until the Debtor demanded release of the vehicle did the City amend their claim from unsecured to secured and added additional storage and towing fees.

Although being a home rule municipality grants the City great latitude in enacting ordinances, such authority is not without limitations. Specifically, Article VII §6(a) of the Illinois Constitution states that "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Furthermore, Article VII §6(i) states that "home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

Looking to state law possessory liens, 810 ILCS 5/9-333 provides that possessory liens are afforded to those who provide goods or services to a Debtor in the ordinary course of business or enhance a collaterals value – neither of which is present in the City's impound scheme.

5

In *City of Oakbrook Terrace v. Suburban Bank and Trust Co.,* 364 Ill.App.3d 506, 514 (2006), the Appellate Court applied a three part test to determine whether a home rule municipality is acting within its scope, including (a) whether they are exercising their power in relation to government affairs, (b) whether the legislature specifically limited the local exercise of the power in use or whether the legislature had specifically declared the State's exercise to be exclusive, and (c) the relationship between state law and the ordinance in question.

After carefully reviewing this three-prong test, the Court in *Howard* concluded that the City's ordinance did not incorporate the general assembly's standards and found it invalid. *In re Howard*, 2018 WL 1905587 at *4. In analyzing the three prongs the Court noted that the Supreme Court in *People ex rel. Lignoul v. City of Chicago*, 67 Ill.2d 480 (1977) stated that home rule powers should not extend to matters such as divorce, real properly law, trusts, contracts, etc., which fell within the competence of state rather than local authorities. *Id.*

Therefore, because the creation of liens is one of property law and statewide concern, not a matter pertaining to local units of government and their affairs, the City's lien should be deemed invalid.

**IV.    NEVERTHELESS, SHOULD THIS COURT FIND THE CITY TO OBTAIN A VALID LIEN, THE CITY IS NOT ENTITLED TO SECTION 362(b)(3).**

The City believes to have found a loophole in 11 U.S.C. §362(b)(3) which excepts from the stay "actions to perfect, maintain, or continue the perfection of an interest in property." 11 U.S.C. §362(b)(3).

First, the City has not met the requirements of §362(b)(3) by failing to meet the "act" requirement as mere possession of collateral fails to constitute an "act" as described in *Walker*. *In re Walker*, 2018 WL 700150 (February 8, 2018); *Howard*, 2018 WL 1905587 at *5.

6

Second, the policy behind §362(b)(3) does not support nor was contemplated to protect the City in this case. Historically, possessory lienholders include mechanics or artisans who perform work or services on collateral. Absent possession of such collateral, these servicemen are left without a remedy to collect on the debt owed to them other than by judicial means. City, however, has numerous mechanisms to collect on the debt should they turnover a vehicle, such as suspending a debtor's license, impounding any future acquired vehicle of the debtor, or taking a debtor's refund – all of which are unavailable to other creditors without judicial intervention. Yet, what is especially alarming is that in the rare circumstance that the City sells an impounded vehicle they do not apply the proceeds to the underlying debt, leaving the Debtor without a vehicle and without a reduction in parking ticket debt. M.C.C §§ 9-92-100(e) "disposal of a vehicle pursuant to this section shall not relieve the violator of inability for all costs, fines, penalties incurred in conjunction with such vehicle…" Such a policy is in direct odds with the purpose of obtaining a lien on property, i.e., to foreclose on the collateral and collect on the underlying debt.

Lastly, public policy greatly favors the return of Debtor's vehicle. The Debtor here was pulled over with a suspended license but poses no threat to society or to the public at large. In viewing the City's proof of claim, a majority of the parking tickets are due to not having city stickers, which one could argue is a form of taxation, or were accrued because of other individuals driving the Debtor's car or fraudulently registering vehicles under the Debtor's name with a different address without her knowledge. Without a vehicle, the Debtor is accruing additional transportational expenses daily, while the City is holding the vehicle at no benefit to society at large. Should the City crush the vehicle as they often do or they return the vehicle to the Debtor and the vehicle is subsequently totaled, the City may still impound any future aquired

7

vehicle of the debtor, or suspend debtor's license or intercept debtor's refund. However, the City chooses not to proceed this way as holding a vehicle ransom is an easier way to force a debtor to pay the City.

## V. CONCLUSION

Debtor's motion for sanctions and turnover must be granted as the City has not sought any remedy before this court, including adequate protection, but is instead violating *Thompson* and the automatic stay by continued possession of Debtors vehicle. Rather than seeking such remedies, the City is using the vehicle as a bargaining chip to squeeze more money out of the Debtor. Without a valid lien, the City is not entitled to any exception to the stay and must immediately turnover the Debtor's vehicle.

WHEREFORE, Robbin Fulton, Debtor, respectfully requests this Honorable Court to enter an Order:

A. Requiring the City of Chicago to turnover Debtor's vehicle, and

B. For such other and further relief as this Court deems fair and just.

Respectfully submitted,

/s/ *John Wonais*
Attorney for the Debtor
The Semrad Law Firm, LLC
20 S. Clark Street, 28th Floor
Chicago, IL 60603
(312) 913-0625

8