United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Robbin L. Fulton,<br><br>Debtor. | Case No. 18 BK 02860<br><br>Chapter 13<br><br>Judge: Hon. Jack B. Schmetterer |

## MEMORANDUM OPINION ON (A) DEBTOR'S MOTION FOR SANCTIONS AGAINST CITY OF CHICAGO FOR VIOLATION OF AUTOMATIC STAY AND FOR TURNOVER [DKT NO. 23] AND (B) DEBTOR'S OBJECTION TO CLAIM #1 OF THE CITY OF CHICAGO [DKT. NO. 28]

Debtor Robbin L. Fulton ("Debtor") moves to Impose Sanctions upon the City of Chicago ("the City"), specifically requiring the City to turnover Debtor's vehicle. Debtor's vehicle was seized and impounded prepetition by the City. Debtor now seeks to impose sanctions upon the City for violating the automatic stay pursuant to 11 U.S.C. § 362(a) because it continues to hold her vehicle postpetition despite her request for turnover for five months in violation of the Seventh Circuit ruling in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009). As relief for this allegedly sanctionable conduct, Debtor seeks the turnover of her vehicle and a daily monetary sanction so debtor can obtain other transportation.

Debtor has also objected to Claim No. 1 filed by the City, because the City is not a secured creditor because its purported possessory lien is not valid under Illinois law. Additionally, Debtor contends that the City has failed to itemize expenses and fees, and failed to provide evidence of perfection or the nature of each citation in contravention of Fed. R. Bankr. P. 3001. Debtor seeks the disallowance of City's Claim #1-2 as a secured claim and a reduction of that claim from $11,831.20 to $6,090.40.

These matters, based on the same set of facts and related legal arguments, will be considered together.

### INTRODUCTION

The Seventh Circuit opnion in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009) placed the burden squarely upon creditors to initiate a showing as to why they should be allowed to retain vehicles of bankruptcy debtors that were seized prepetition. Unless such showing is initiated, creditors must surrender the vehicle because of the automatic stay.

The City of Chicago has completely disregarded this obligation, choosing instead to continue holding vehicles of debtors postpetition and waiting many months until proceedings are brought by debtor against it in bankruptcy and then assert a response that its purported possessory lien grants it an exception to the automatic stay. The City has taken this tactical delay position to coerce debtors to pay traffic fines quickly and fully in their bankruptcy plan and also to avoid paying filing fees required for the filing of motions for relief from the automatic stay. In this way, the City is circumventing entirely the procedural burden imposed on it by *Thompson* and the protections provided to debtors by the automatic stay. The City must comply with the requirements of *Thompson* so that debtors may, unless some cause is shown, recover their vehicles in bankruptcy, allowing them to continue working and making payments under their Chapter 13 plans.

## UNDISPUTED FACTS

1. Debtor filed her petition for Chapter 13 bankruptcy relief on January 31, 2018. (Dkt. No. 23).
2. Prior to filing for bankruptcy, Debtor's vehicle, a 2015 Kia Soul, was towed and impounded by the City of Chicago on December 24, 2017. (Dkt. No. 23).
3. The Debtor filed a plan on February 5, 2018, treating the City of Chicago as a general unsecured creditor. (Dkt. No. 23).
4. The City filed a general unsecured proof of claim on February 23, 2018 valued at $9,391.20. (Dkt. No. 23.)
5. The Debtor's modified plan was confirmed on March 21, 2018. (Dkt. No. 23.)
6. Upon confirmation, Debtor's counsel requested that the City turnover the Debtor's vehicle. (Dkt. No. 23).
7. On April 27, 2018, after the Debtor requested turnover of her vehicle, the City amended its proof of claim, adding impound fees and asserting its status as a secured creditor. The total amount of the claim was $11,831.20. (Dkt. No. 23).
8. Debtor filed her instant Motion for Sanctions on May 2, 2018. She argues that pursuant to Seventh Circuit authority, the City must turnover her vehicle upon her request. Their failure to do so to this point is sanctionable conduct due to its violation of 11 U.S.C. § 362(a). She also argues that the City does not have a possessory lien upon which to rely, and thus, 11 U.S.C. § 362(b)(3) is inapplicable. (Dkt. No. 23).

9. The City responded on May 8, 2018. It argues that the Motion must be denied because all matters regarding turnover must be pursued through adversary proceedings, rather than by motion. The City also asserts that it has not violated the stay because it is simply retaining possession in order to maintain perfection of its possessory lien, and is thus excepted from the say pursuant to 11 U.S.C. § 362(b)(3). The City asserts that pursuant to 625 ILCS 5/11-208.3(c), it was empowered by the State of Illinois to create Municipal Code § 9-92-080(f), the provision creating its right to possessory liens, and is thus within its rights as a home rule unit to continuing enforcing that provision.

10. The Debtor filed her Reply on May 15, 2018. The Debtor argues that the City's assertion that *Thompson* is inapplicable is incorrect, and that turnover is required pursuant to Seventh Circuit precedent. Additionally, Debtor argues that the Seventh Circuit indicated in *Thompson* that motions for turnover were allowed in place of adversary proceedings. Finally, Debtor repeats her argument that recent case law indicates that the City does not have a possessory lien, and in the alternative, that mere possession of the vehicle does not afford the City protection under 11 U.S.C. § 362(b)(3).

11. Also on May 8, 2018, Debtor filed her Objection to Claim No. 1 of the City of Chicago. Debtor argues that pursuant to the analysis of Judge Cox's recent opinion *In re Howard*, No. BR 17-25141, 2018 WL 1805587 (Bankr. N.D. Ill. Apr. 19, 2018), the City does not have a valid possessory lien under Illinois law. Additionally, the Debtor argues that the City's failure to file a *prima facie* secured claim under Fed. R. Bankr. P. 3001, including itemization of interest, fees, expenses, evidence of perfection or the nature of each citation listed, and is thus also barred from seeking status as a secured creditor. Finally, Debtor argues that City's calculation of its claim is incorrect, and that Debtor actually owes $6,090.40 based upon the tickets in the proof of claim and not $9,391.20 or $11,831.20 as listed in the City's initial claim and amended claim respectively. (Dkt. No. 28).

12. The City filed its Response to Debtor's Objection on May 14, 2018. It argues that contrary to Judge Cox's ruling in *In re Howard*, No. BR 17-25141, 2018 WL 1805587 (Bankr. N.D. Ill. Apr. 19, 2018), the City does have a valid possessory lien because it has been empowered by the State of Illinois to create its own system for dealing with traffic violations, pursuant to the 625 ILCS 5/11-208.3 and the liberal construction of such

3

statute as it applies to home rule units in the Illinois Constitution. Furthermore, the City argues that *Howard* incorrectly chose the standard for possessory liens to be applied to the case at bar. The City argues that pursuant to pertinent Illinois case law, courts have found that impounded vehicles serve as collateral for civil fines. *People v. Jaurdon*, 718 N.E.2d 647, 663 (Ill. App. 1st Dist. 1999). The City further asserts that possession is the only mechanism available to it to ensure that their lien is satisfied. The City next asserts that Debtor's vehicle was impounded because she was driving without a license, and as home rule unit with authority to impound vehicles operated by persons without a license, the City was authorized both by ordinance and statute to impound Debtor's vehicle. The City argues that local governments have a strong interest in enforcing their own ordinances regarding traffic violations. The City also argues that because the Debtor's plan was silent as to whether the City's lien was to be stripped off, it's secured lien passed through the bankruptcy unaffected. *In re Swanson*, 312 B.R. 153, 162 (Bankr. N.D. Ill. 2004). Finally, the City asserts that its calculation of the value of its claim is correct, and Debtor is omitting fees related to towing and impoundment, as well as the fine levied against individuals who are found to be operating a vehicle without a license, in her $6,090.40 calculation.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(B) and (E).

### A. DEBTOR'S MOTION FOR SANCTIONS

The City of Chicago argues that it does not have to turnover Debtor's vehicle pursuant to the Seventh Circuit's decision in *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009), because the act of retaining possession of a debtor's vehicle seized pre-petition is not a violation of the automatic stay provisions of 11 U.S.C. § 362. The City asserts that its position is correct for two reasons. First, it argues (1) that 11 U.S.C. § 542 is merely an enabling statute that authorizes a trustee to seek turnover of the property of the debtor if the debtor had a substantive right to the property prior to the bankruptcy filing date, rather than a lien

4

avoidance statute, and (2) that the Seventh Circuit has held that an adversary proceeding is necessary to require turnover of property. Second, the City argues that its right to possession during the pendency of the bankruptcy case is protected by 11 U.S.C. § 362(b)(3) because the City claims a possessory lien based upon its Ordinance granting it such a possessory lien, and that lien requires possession to continue perfection.

## I. The City's Impoundment of Debtor's Vehicle is Not Excepted from the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(3)

The City argues that even if the Debtor does have an equitable interest in the property such that she is allowed to seek turnover of the vehicle, turnover is not required pursuant to *Thompson* because the City's passive possession of the Debtor's vehicle is its means of maintaining perfection of its possessory lien, and thus, excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(3).

In *Thompson*, the Seventh Circuit held that creditors who exercised control over vehicles belonging to debtors by repossessing them prebankruptcy would have to turn over those vehicles upon the request of a debtor once a bankruptcy has been filed. 566 F.3d at 701. In that case, the secured creditor (the seller of the vehicle in question) refused to relinquish possession of the vehicle because it felt that the debtor could not adequately protect its interests as required by the Bankruptcy Code. *Id.* at 700. The secured creditor had repossessed debtor's vehicle prepetition. *Id* at 701. The opinion held that the act of the creditor, "of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3) of the Bankruptcy Code." *Id.* at 703. As a result, the opinion determined that, "[t]he right of possession is incident to the automatic stay. A subjectively perceived lack of adequate protection is not an exception to the stay provision and does not defeat this right." *Id.* at 704. As a result, the holding was that, "upon the request of a debtor that has filed for of bankruptcy, a creditor must first return an asset in which the debtor has an interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court. *Id.* at 708. In effect, the Circuit applied the automatic stay to the prebankruptcy repossession of the debtor's vehicle.

The *Thompson* opinion imposed a clear procedural burden upon creditors. A creditor who has repossessed the vehicle of a debtor prepetition is obligated to return that vehicle to the debtor once debtor has made such a request during the bankruptcy proceeding. A creditor may then seek adequate protection from the debtor. Alternatively, a creditor may file an emergency motion for

5

relief from the automatic stay and attempt to initiate a showing as to why they should be allowed to retain vehicles of bankruptcy debtors that were seized prepetition.

The City has not returned the Debtor's vehicle or filed any motion attempting to show that it should be allowed to retain Debtor's vehicle, in direct contravention of *Thompson*. It is ignoring its procedural burden to either return the vehicle or make a showing as to why it should be allowed to retain the vehicle, and thus violates the automatic stay. The City is instead choosing to wait until debtors in bankruptcy challenge their possession of the vehicle to assert that their possessory lien is excepted from the automatic stay. However, the panel in *Thompson* made it clear that a creditor is to turnover possession of the vehicle upon the request of the debtor or to immediately file a defense like the one the City is arguing. The *Thompson* opinion does not allow the City to delay the return of the vehicle without the filing of a motion, nor does it allow the City to rest on its heels and wait for a debtor to initiate an action against it and only then assert its defenses. Even if a higher court were to rule that the City's possessory lien is a valid exception to the automatic stay, debtors may still offer alternative, substantive liens in their plans that protect the City's right to payment and still allow for return of the vehicle. The City thus far has, since the bankruptcy case was filed in January, denied debtors the right to contest the City's defenses or offer alternative liens by retaining possession of the vehicles without initiating any procedure allowing it do so. It is abundantly clear that the City is ignoring the procedural requirements of *Thompson* and making life unnecessarily difficult for debtors who need their vehicles in order to get to work, earn money, and make payments on their Chapter 13 plans.

Instead, the City relies primarily on Judge Cassling's *In re Avila*, 566 B.R. 558 (Bankr. N.D. Ill. 2017) decision, wherein the City was just such a creditor, required to turnover vehicles upon request of a bankrupt debtor. In *Avila*, the City of Chicago sought a declaration that its continued postpetition retention of a Chapter 13 debtor's vehicle, seized prepetition, did not violate the automatic stay. 566 B.R. at 559. Judge Cassling held that "a creditor's post-petition possession of property necessary to the perfection of a prepetition lien does not violate the stay," because it could rely on the exception to the stay found in 11 U.S.C. § 362(b)(3), writing that because the City did not have an underlying consensual lien to fall back upon, as the creditor in *Thompson* did, it was necessary for the City to retain possession of the vehicle in order to maintain perfection of its possessory lien on the debtor's vehicle and was allowed pursuant to 11 U.S.C. 362(b)(3). *Id* at 562 (quoting *In re Ingram*, 508 B.R. 98, 102 (Bankr. E.D. Wis. 2014)).

6

The City has since relied on *Avila* in cases such as this one where the Debtor's car was possessed pre-petition, and the City refuses to release the vehicle because doing so would result in the loss of its possessory lien. At least one District Court judge has since agreed with Judge Cassling's *Avila* opinion on appeal, vacating a bankruptcy court order requiring the City to turnover a debtor's vehicle under the automatic stay. *Chicago v. Kennedy*, No. 17 CV 5945, 2018 WL 2087453 (N.D. Ill. May 4, 2018).

That decision by a single District Judge is non-binding, and the undersigned respectfully disagrees with the logic of *Avila* for several reasons. First, § 362(b)(3)'s exception to the stay applies only to "acts" taken by creditors to maintain their perfection. Passive possession of a debtor's property for the purposes of maintaining possession does not constitute an "act," and courts that have held otherwise read that provision as if it included any acts *or omissions*. Moreover, requiring that the City immediately turnover the vehicle upon Debtor's request or file an emergency motion for relief from stay in order to determine if it can be adequately protected, either by retaining the vehicle or being granted some other replacement liens is an alteration of only the City's procedural rights, not its substantive rights.

The City argues that it must retain possession of the vehicle in order to maintain perfection of its possessory lien, and that no other lien would sufficiently protect its interests. The *Kennedy* opinion noted that the Supreme Court, in *Whiting Pools* explained that, "Congress contemplated this situation and decided that other provisions of the code would adequately protect, and therefore ***should replace***, a creditor's possessory interests." No. 17 CV 5945, 2018 WL 2087453 (Bankr. N.D. Ill. May 4, 2018) (emphasis added) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983)). Were the Debtor in this case to offer a replacement lien in her plan that ensured the City would be paid the amount it is owed, the City would be adequately protected, and such a result would comport with the Supreme Court's holding in *Whiting Pools*. 462 U.S. 198, 207 (1983). The City's assertion that no replacement lien will adequately protect its interest in the way that possession of the vehicle does is thus an empty argument.

**II. The City Does Not Have a Valid Possessory Lien**

However, Municipal Code § 9-92-080(f) actually does not grant the City of Chicago a valid possessory lien under Illinois state law.

Judge Cox's recent opinion, *In re Howard*, provides instructive analysis of the issue. No. BR 17-25141, 2018 WL 1905587 (Bankr. N.D. Ill. Apr. 19, 2018). In *Howard*, the opinion examined when Illinois courts have recognized common-law possessory liens. *Id*. Pursuant to 810 ILCS 5/9-333, which states that possessory liens in Illinois are secured by, "payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business," the opinion concluded that the City did not have a statutory right to a possessory lien. *Id*. As the City had not furnished any goods or services to the debtor in that case, the *Howard* opinion concluded that the City did not have a valid possessory lien pursuant to Illinois law. *Id*. Moreover, the *Howard* opinion stated that while the Illinois Constitution does allow for concurrent exercise of power between the State of Illinois and home rule units within it, such as the City of Chicago, Illinois courts have held that where the General Assembly or Illinois Constitution have limited their power to govern, home rule units cannot expand their authority unilaterally, in this case, by attempting to grant itself a possessory lien that the state expressly limited in scope. *Id*. (citing *City of Wheaton v. Loerop*, 399 Ill. App. 3d 433, 434 (2010)). Opinions by those courts required municipalities to show that (1) the exercise of power pertained to its government and affairs, (2) whether the legislature had specifically limited the local exercise of power on an issue or whether the State's exercise was exclusive, preempting the exercise of power by home rule units and (3) that if no specific action had been taken, a court must "determine the proper relationship between the local ordinance and state law." *Id*. (citing *City of Oakbrook Terrace v. Suburban Bank and Trust Co.*, 364 Ill. App. 3d 506, 514 (2006). The *Howard* opinion also analogized the City's enactment of Municipal Code § 9-92-080(f) to several Illinois Supreme Court cases wherein the Illinois Supreme Court held that some functions of home rule units do not pertain to a unit's government and affairs, and are thus not appropriate for municipal legislation. *Id*. ("Those cases invalidated ordinances on the basis of statewide, rather than local interest in the subject matter of the ordinance.").

Ultimately, Judge Cox held that the, "[n]either the City's legislative enactment nor its pleadings," addressed the, "three statutory elements needed to support its position that it has a possessory lien in impounded vehicles," indicating that the, "creation and imposition of liens is a matter of statewide concern," not one pertaining to local units of government. *Id*. Thus, Judge Cox concluded that because the City of Chicago had not demonstrated that it had any possessory lien pursuant to Illinois law, the exception to the stay allowing creditors to take any act to perfect

8

their liens, 11 U.S.C. § 362(b)(3), did not apply to the City's seizure and impoundment of the debtor's vehicle. *Id.*

While the City has appealed the *Howard* decision, and that appeal remains pending, its analysis is persuasive. The City has not shown that, pursuant to Illinois law, it has any possessory lien whatsoever, and thus, 11 U.S.C. § 362(b)(3) does not except its actions from the automatic stay. Moreover, even if the City could demonstrate that it has a valid possessory lien under Illinois law, the *Thompson* decision clearly requires secured creditors to turnover the property to the estate of the debtor upon request or seek adequate protection (for instance, a replacement lien offered in a plan) by emergency motion for relief from stay. *Thompson v. Gen. Motors Acceptance Corp.*, LLC, 566 F.3d 699, 707 (7th Cir. 2009).

### III. The City's Power to Control Traffic

The City further argues that pursuant to 625 ILCS 5/11-208.3, it has been provided by the State of Illinois with a mechanism to immobilize and enforce traffic regulations. While 625 ILCS 5/11-208.3(c) does empower municipalities to establish, "a program of vehicle immobilization for the purpose of facilitating enforcement of," regulations regarding, "vehicular standing, parking, compliance, automated speed enforcement system, or automated traffic law regulations," nothing in that statute allows the City to enact an ordinance granting it the right to a possessory lien that contravenes bankruptcy law and the Seventh Circuit's holding in *Thompson* requiring that upon the request of a debtor, a creditor must turn the vehicle over or seek stay relief. The City is correct that the Illinois Constitution grants it broad power to enact ordinances as a home rule unit, and that such power is to construed liberally. ILL. CONST. 1970, art. VII, § 6(a); *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 988 N.E.2d 75, 81 (Ill. 2013). However, the City is asking for an interpretation of 625 ILCS 5/11-208.3 that creates a right to impose possessory liens with priority over all other creditors and a right to retain possession over vehicles belonging to the estates of debtors which contravene federal bankruptcy law and also the Supremacy Clause of the Constitution. What the City is attempting to do then is use this state statute as a means to circumvent U.S. Bankruptcy law and the rights of debtors therein.

While the Supreme Court in *Whiting Pools* indicated that turnover pursuant to 11 U.S.C. § 542 cannot modify a creditor's substantive rights, that does not mean that the City cannot be granted some kind of replacement lien that satisfies its rights to payment just as well. *City of Chicago v. Kennedy*, No. 17 CV 5945, 2018 WL 2087453, at *4 (Bankr. N.D. Ill. May 4, 2018)

9

(citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983)). The City has not shown that only possession will protect it. Creditors, both secured and unsecured, receive payments in full or in partial satisfaction of the debts owing to them in bankruptcy without having to retain the property of the debtor or her estate. Indeed, it is undisputed that the City has authority to impound and hold a debtor's vehicle when they have committed violations and refused to pay their tickets. But, once that debtor enters bankruptcy, the City is bound by Bankruptcy Law and the ruling in Thompson to return the vehicle or seek protection by a motion. As the Seventh Circuit noted in *Thompson*, other remedies are available to creditors who believe they will not be adequately protected should they have to give up their right to possession, but they must look to bankruptcy remedies, rather than the non-bankruptcy right to possession. 566 F.3d at 704. That the City has not chosen to seek an alternative lien or some other means of adequate protection does not absolve them of their duty to turnover the Debtor's vehicle pursuant to *Thompson*.

The City is attempting to destroy a basic bankruptcy protection. It has no basis, either based upon its asserted possessory lien nor upon its argument that *Thompson* is inapplicable, to continue to hold vehicles of the Debtor, seized pre-petition, once the Debtor made the request for turnover. The City does not have a possessory lien pursuant to Illinois law, and even if it did, such lien would not be excepted from the automatic stay. In the event that some higher court should overrule opinions which have determined that the City does not have a possessory lien, the Supreme Court in *Whiting Pools* has made clear that a replacement lien, offered in a debtor's plan, would not violate the prohibition of modifying a creditor's procedural rights in the course of turnover actions pursuant to 11 U.S.C. § 542.

**IV. The Debtor has an Equitable Interest in the Vehicle Seized Prepetition by the City and May Seek Turnover Pursuant to 11 U.S.C. § 542 and Does Not Need to File an Adversary Proceeding**

The City's arguments are premised upon its insistence that Municipal Code § 9-92-080(f) creates a valid possessory lien in favor of the City. As a result of this possessory lien, the City argues, the Debtor did not have the substantive interest in the vehicle prior to the petition date that would allow her to seek turnover of the property pursuant to 11 U.S.C. § 542.

The City's arguement that Debtor does not have the required substantive interest to request turnover of the vehicle pursuant to 11 U.S.C. § 542 is plainly incorrect. A Seventh Circuit panel held in *Thompson* that it is unquestionable that a debtor whose vehicle was seized

10

prepetition had, "an equitable interest in the [vehicle], and, as such, it is property of his bankruptcy estate." *Thompson*, 566 F.3d at 701; *see also City of Chicago v. Kennedy*, No. 17 CV 5945, 2018 WL 2087453, at *4 (N.D. Ill. May 4, 2018). By that precedent, Debtor clearly has the right to request turnover of the vehicle pursuant to 11 U.S.C. § 542.

Moreover, she does not need to do so by way of filing an adversary proceeding. The City is correct that a Seventh Circuit panel held in *Matter of Perkins* that turnover actions must ordinarily be commenced by filing a complaint and initiating an adversary proceeding. 902 F.2d 1254, 1258 (7th Cir. 1990).

But, the City's position is incorrect on its face because Debtor's Motion seeks to impose sanctions for violation of the automatic stay, including the remedy of requiring the City to turnover the vehicle, and thus, this is not merely a motion for turnover. It is undisputed that a bankruptcy court may rely upon its inherent power to impose sanctions. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000). Nothing in the Bankruptcy Code requires an adversary for the imposition of sanctions. Thus, while Debtor is seeking turnover of the vehicle as a remedy for the City's sanctionable conduct, the Motion itself is a Motion for Sanctions, and does not require the initiation of an adversary proceeding. To require an adversary proceeding would delay the remedy warranted for violation of the automatic stay and would weaken the entire concept of stay relief. The procedural ruling in *Thompson* is clearly inconsistent with any requirement for an adversary proceeding to compel the turnover required by the automatic stay.

### B. DEBTOR'S OBJECTION TO CLAIM #1 OF THE CITY OF CHICAGO

The City argues in its Response to Debtor's Objection that it is entitled to status as a secured creditor pursuant to its rights as a possessory lienholder under Municipal Code § 9-92-080(f). It asserts that pursuant to Illinois law, it has been granted the right to enact a statutory scheme that grants it such a possessory lien and that its rights arising from such a lien cannot be modified in bankruptcy proceedings. The City also advances the argument that contrary to Debtor's calculations, it is entitled to the full value of its claim based upon the tickets, fines, and fees that have been levied upon the Debtor.

### V. The City is Not Entitled to Secured Creditor Status Because it Does Not have a Valid Possessory Lien

The City's primary argument in response to Debtor's Objection is that, pursuant to relevant nonbankruptcy law, it has been empowered by the State of Illinois to enact an ordinance

11

that allows it to retain possession over Debtor's vehicle in bankruptcy and that such a lien grants it status as a secured creditor of the Debtor. The City is incorrect with regards to both of those arguments.

It has already been explained above that the Seventh Circuit panel's decision in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009) plainly held that upon the request of a debtor in bankruptcy, the City is required to turnover the vehicle. On that basis alone, *Thompson* has clearly established that the City does not have a valid possessory lien over Debtor's vehicle because it was obligated to return the vehicle to the Debtor upon her request. If the City were able to show cause as to why its interest were in danger, it could then be granted a replacement lien after being required to immediately turnover the vehicle, or it could be allowed to retain the vehicle if no other adequate relief were possible. *City of Chicago v. Kennedy*, 17 CV 5945, 2018 WL 2087453, at *4 (Bankr. N.D. Ill. May 4, 2018) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983)). The City is ignoring the procedural burden imposed by *Thompson*. Moreover, it is clear that the City does not have a possessory lien pursuant to Illinois law. *In re Howard*, No. BR 17-25141, 2018 WL 1905587, at *3 (Bankr. N.D. Ill. Apr. 19, 2018).

The City's ancillary argument that confirmation of the Debtor's plan does not change the analysis of its status as a creditor is correct in the sense that the plan was silent on the issue of whether the asserted possessory lien was stripped off, if contrary to the argument above, it thus has been said a lien continues to exist. *In re Swanson*, 312 B.R. 153, 162 (Bankr. N.D. Ill. 2004); *In re Turner*, 558 B.R. 269, 284 (Bankr. N.D. Ill. 2016). However, given that it is clear that the City never had a valid possessory lien on Debtor's vehicle, the lien which continues to exist is merely an unsecured lien of the City, not its purported possessory lien.

**VI. Debtor has Not Shown that the City is Entitled to Less than the Full Value of its Unsecured Claim**

While it is clear that, based on Illinois law, the City does not have a valid possessory lien and is thus not a secured creditor in this case, Debtor has also failed to support her assertion the City's unsecured claim is worth less than what the City claims it to be, approximately $11,000.00. The City has amended its proof of claim to include itemization and explanations of all charges and descriptions of each of the tickets and violations that Debtor is alleged to have incurred. (Dkt. No. 35, Exh. C). Bankruptcy courts liberally allow amendments to proofs of

claim, when the purpose of such amendments is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery upon facts set forth in original claim. Fed.Rules Bankr.Proc.Rule 7015, 11 U.S.C.A.; Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A; *see also In re Xpedior Inc.*, 325 B.R. 392 (Bankr. N.D. Ill. 2005).

Debtor's bare assertion that the towing and storage fees should not be included in this calculation is unsupported by any relevant legal authority. On the other hand, the City is clearly well within its rights to assert fines and violations against Debtor, including the fees incurred by the City for towing and storage of the vehicle, and the $1,000.00 fine that Debtor incurred for operating the vehicle without a license. Thus, Debtor has not articulated any reason why City's unsecured claim should be reduced from the $11,811.20 indicated in its most recent amended proof of claim.

Thus, Debtor's Objection as to the amount of the City's unsecured proof of claim will be overruled by separate order entered concurrently herewith.

## CONCLUSION

For the foregoing reasons, Debtor's Motion will be granted by separate order entered concurrently herewith. The City will be required to turnover Debtor's vehicle within 24 hours of the entry of that order, and for each day it refuses to comply with such order by not releasing the vehicle, will pay Debtor a sanction of $50.00 until the vehicle is returned to the Debtor, so that Debtor may obtain transportation. Additionally, Debtor's Objection to Claim #1 of the City of Chicago will be sustained to the extent that the City is deemed to be a secured creditor, and will be overruled to the extent that Debtor objects to the amount of the City's claim by separate order entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of May, 2018